UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN WRIGHT, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of Social ) <br> Security, ) <br> ) <br> Defendant. ) <br> _____ ) | Case No. EDCV 07-1345 JC <br><br> MEMORANDUM OPINION AND <br> ORDER OF REMAND |

## I.   SUMMARY

On October 17, 2007, plaintiff Kathleen Wright ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; October 18, 2007 Case Management Order, ¶ 5.

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand because the Administrative Law Judge ("ALJ") erroneously failed to address lay witness evidence and the Court cannot find such error to be harmless.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On August 22, 2005, plaintiff filed an application for Supplemental Security Income benefits. (Administrative Record ("AR") 12, 35-36). Plaintiff asserted that she became disabled due to severe asthma, depression and mild arthritis. (AR 65, 66). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel), a medical expert and a vocational expert on June 26, 2007. (AR 621-42).

On August 6, 2007, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 12-19). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: A depressive disorder not otherwise specified, a psychotic disorder not otherwise specified, cocaine dependence, and a personality disorder not otherwise specified (AR 14); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 14); (3) plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels, with the following nonexertional limitations: (i) work limited to simple repetitive work tasks which is object oriented and requires no hypervigilance; (ii) contact with the general public, but only occasional and minimal non-intense contact with supervisors and coworkers; (iii) no responsibility for the safety of others; and (iv) no operation of dangerous unguarded moving machinery (AR 15); (4) plaintiff could not perform her past relevant work (AR 18); (5) plaintiff could perform other work that exists in significant number in the national economy (AR 18); and

(6) plaintiff's allegations regarding her limitations were not entirely credible (AR 16).

The Appeals Council denied plaintiff's application for review. (AR 4-6).

### III. APPLICABLE LEGAL STANDARDS

#### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit her ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

///
///
///

|   |     |                                                                                   |
|---|-----|-----------------------------------------------------------------------------------|
|   | (4) | Does the claimant possess the residual functional capacity to perform her past relevant work?[1]  If so, the claimant is not disabled.  If not, proceed to step five. |
|   | (5) | Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled. |

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

### B. Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and

---

[1] Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. § 416.945(a).

4

evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV.   DISCUSSION

### A.   A Remand is Appropriate Because the ALJ Erroneously Failed to Address Lay Evidence and the Court Cannot Find Such Error to Be Harmless

Plaintiff contends that a reversal or remand is appropriate because the ALJ erroneously failed to address written statements supplied by plaintiff's friends, and to provide adequate reasons for rejecting such evidence.  (Plaintiff's Motion at 2-4).  As this Court concludes that the ALJ erred in failing to address at least one of the lay witness statements in issue and as it cannot find that the ALJ's error was harmless, a remand is warranted.

#### 1.   Pertinent Facts

##### a.   Plaintiff's Statements and Testimony

A disability report dated January 5, 2005, reflects the following:  Plaintiff suffered from depression.  (AR 66).  She had received medical treatment for emotional or mental problems.  (AR 67-68).  She was treated by two doctors, and prescribed medication for "depression disorder."  (AR 68-69).  She was currently taking Effexor and Risperdal for, *inter alia*, depression.  (AR 69).

A function report dated January 30, 2005 reflects the following:  Plaintiff (i) lived in a shelter (AR 75); (ii) took "all day" to complete household chores (AR 77); (iii) was able to grocery shop and handle money (AR 75); (iv) enjoyed sewing/arts and crafts (AR 79); (v) socialized with friends twice a week and attended church regularly (AR 79); (vi) was impatient (AR 80); (vii) did not finish what she started (AR 80); (viii) followed instructions well (AR 80); (ix) generally

got along with authority figures (AR 81); (x) did not handle stress well (AR 81); and (xi) was able to handle changes in routine "off and on" (AR 81).

An undated disability report reflects the following: Plaintiff (i) had sought treatment for a "mental problem" (AR 94); (ii) was still taking Risperdal and Effexor for anxiety (AR 96); (iii) could not cook or make decisions (AR 97); (iv) had a poor memory (AR 97); (v) felt "isolated" (AR 98); (vi) heard "voices and talking" (AR 98); (vii) did not feel like herself (AR 98); and (viii) would "break down in tears." (AR 98).

A function report dated September 21, 2005, reflects the following: Plaintiff (i) needed reminders to take medication (AR 112); (ii) prepared her own meals daily, and did household chores, but they took "all day," and she required encouragement (AR 112); (iii) could go to the store, but was unable to handle money, and had a "problem [] counting change" (AR 113); (iv) went to "Jefferson Wellness" twice a week as her only hobby (AR 114); (v) did not handle written or spoken instructions well (AR 115); (vi) got along well with authority figures (AR 116); (vii) did not handle stress well (AR 116); and (viii) feared being closed up in a room.

A disability report dated December 6, 2005, reflects the following: Plaintiff (i) cried more than previously (AR 118); (ii) was fearful because she did not know why she was crying and depressed (AR 118); (iii) sought treatment for depression (AR 119); (iv) continued to take Risperdal as an "anti psychotic" and Effexor as an "antidepressant" (AR 121); (v) lost her appetite and did not eat as a result (AR 122, 123); and (vi) could not sleep most of the night, and consequently was tired "all day" (AR 123).

A function report dated February 28, 2006, reflects the following: Plaintiff (i) was homeless and cared for herself as best as she could (AR 126); (ii) did not prepare her own meals (which were prepared by the shelter) (AR 127); (iii) was able to pay bills, count change, and handle a savings account, but had never used a

checkbook or money orders (AR 128); (iv) rarely pursued her hobbies of reading and puzzles (AR 129); (v) socialized with people at the shelter, and was taken to church by others (AR 129); (vi) got along with family, friends and neighbors by not speaking with them (AR 130); (vii) no longer had friends, and did not go to movies or dinner (AR 130); (viii) had no attention span (AR 130); (ix) had difficulty with written instructions, and was unable to follow spoken instructions (AR 130); (x) did not speak or get along with authority figures well (AR 131); (xi) was unable to handle stress (AR 131); (xii) got frustrated and cried when her routine was changed (AR 131); and (xiii) feared "closed in places [and] "being around people" (AR 131).

On June 26, 2007, at the administrative hearing, plaintiff testified regarding her symptoms, pain and limitations. (AR 623-26, 637-40). She stated, *inter alia*, that she: (i) stopped working because "two little people were talking about [her]" which made her "nervous" and "frustrated" (AR 624); (ii) heard "voices," that talked "about" her, and told her they were "going to get [her]" (AR 624-25); (iii) thought other people were talking about her (AR 625, 637, 638, 639); (iv) took medication regularly for her auditory hallucinations which made her sleep if she took it during the day (AR 624-25, 628); (v) had used cocaine once a week during an undetermined period over six months prior to the hearing (AR 626); (vi) had not used alcohol since she was a teenager, and did not use other illegal drugs (AR 626-27); (vii) did not remember the last time she was in the hospital for psychiatric problems (AR 628); (viii) saw her doctor monthly for medication and psychotherapy (AR 628); (ix) feared that other people were "going to do something to [her]," such as "jump on [her] and beat [her] up," "attack [her]," and "[t]ry to run [her] over" (AR 637-38, 639); (x) felt "disgusted sometimes" (AR 637); and (xi) had lost several jobs because of her fears.

///

///

### b. Statement of Brenda Hicks

On February 19, 2005, plaintiff's friend, Brenda Hicks, who had known plaintiff for over seven years before the administrative hearing, completed a function report that reflects her observations regarding plaintiff's alleged impairments and their asserted impact on plaintiff's daily activities. (AR 101-109). She reported, *inter alia*, that plaintiff: (i) spent a lot of time watching TV, crying, sleeping and obsessing that someone was watching or following her (AR 101); (ii) woke up frequently during the night (AR 102); (iii) was "unable to dress herself appropriately" (AR 102); (iv) "frequently" needed to be reminded to bathe and needed assistance with hair care (AR 102); (v) was "unable to prepare nutritional meals" or "[forgot] how to prepare meals" for herself (AR 102, 103); (vi) needed reminders to take care of other personal needs (AR 103); (vii) needed to have medications administered to her by another person or she would forget to take or misplace the medication (AR 103); (viii) was able to do some household chores, but took "hours" to do so because she had trouble concentrating, was unable to focus on single tasks, and required "constant encouragement" (AR 103-104); (ix) "frequently wander[ed] from the house or yard" (AR 104); (x) seldom went outside, but when she did, became easily distracted and anxious in crowds and traffic, was "unable to concentrate," and usually had to be accompanied (AR 104); (xi) had previously been "able to maintain and run her household," but due to her disability was now unable to pay bills or handle a bank account (AR 104-105); (xii) would "sit and stare at the T.V. for as long as it [was] on" (AR 105); (xiii) did not spend time with others socially (AR 104); (xiv) occasionally was accompanied to church or the doctor (AR 104); (xv) had become withdrawn and anxious and had isolated herself (AR 106); (xvi) "appear[ed] unable to concentrate" and followed written and spoken instructions "poorly" (AR 106); (xvii) "appear[ed] at times not to hear or see when being spoken to or show[n] instructions" (AR 106); (xviii) had an attention span of mere seconds (AR 106);

(xix) handled stress poorly, became inappropriately angry or slept for many hours (AR 107); (xx) became "confused [and] anxious" in response to changes in routine (AR 107); and (xxi) feared being followed, and had a fear of "being watched or laughed at by unknown persons" (AR 107).

### c. Statement of Kevin Hicks

On February 28, 2006, plaintiff's friend, Kevin Hicks, who had known plaintiff for over seven years before the administrative hearing, completed a function report that reflects his observations regarding plaintiff's alleged impairments and their asserted impact on plaintiff's daily activities. (AR 133-40). He reported, *inter alia*, that plaintiff: (i) would seek help from the Jefferson Wellness Center (AR 133); (ii) had to take medication in order to sleep (AR 134); (iii) put on her clothing the "wrong way" (AR 134); (iv) needed help bathing (AR 134); (v) always wore a cap for her hair (AR 134); (vi) went to church for food (AR 134); (vii) had clothing that was always wet (AR 134); (viii) always needed to be told what to do (AR 134); (ix) needed to be reminded to bathe, wear clean clothes, and wash her hands and hair (AR 135); (x) needed "daily instruction" regarding the time to take medication (AR 135); (xi) lived in a shelter and didn't know how to cook (AR 135); (xii) was unable to do any household chores (AR 135); (xiii) remained outside whenever she was not in the shelter (AR 136); (xiv) was able to handle a savings account, but never had any money (AR 136); (xv) had no hobbies (AR 137); (xvi) spent no social time with other people, and needed to be reminded to go places (AR 137); (xvii) had trouble getting along with family, friends and neighbors, always wanted to blame others or got upset (AR 138); (xviii) was unable to follow written instructions, had to be told many times to do the correct thing, felt that she knew the way of doing things, but didn't (AR 138); (xix) had difficulty following conversations (AR 138); (xx) heard voices and did not trust anyone (AR 138); (xxi) did not speak with authority figures (AR 139); (xxii) always cried in response to stress (AR 139);

(xxiii) rejected changes in routine (AR 139); and (xxiv) thought "they [were] out to get her"(AR 139).

### 2.     Pertinent Law

Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. Stout, 454 F.3d at 1056 (citations omitted); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Robbins, 466 F.3d at 885 (ALJ required to account for all lay witness testimony in discussion of findings) (citation omitted); Regennitter v. Commissioner, 166 F.3d 1294, 1298 (9th Cir. 1999) (testimony by lay witness who has observed claimant is important source of information about claimant's impairments); Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (lay witness testimony as to claimant's symptoms or how impairment affects ability to work is competent evidence and therefore cannot be disregarded without comment) (citations omitted); Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (ALJ must consider observations of non-medical sources, *e.g.*, lay witnesses, as to how impairment affects claimant's ability to work). The standards discussed in these authorities appear equally applicable to written statements. Cf. Schneider v. Commissioner, 223 F.3d 968, 974-75 (9th Cir. 2000) (ALJ erred in failing to consider letters submitted by claimant's friends and ex-employers in evaluating severity of claimant's functional limitations).

In cases in which "the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Robbins, 466 F.3d at 885 (quoting Stout, 454 F.3d at 1055-56).

///

///

### 3. Analysis

As the above-stated facts reflect, the statements and testimony of plaintiff's friends, Brenda and Kevin Hicks, are, on the whole, consistent with, and corroborate plaintiff's testimony and statements regarding her impairments, symptoms and related limitations. The statement of at least Kevin Hicks constituted competent lay evidence that the ALJ had to take into account unless he expressly determined to disregard it and gave reasons therefor. The ALJ erred in silently disregarding such evidence.

Although defendant urges the Court to conclude that any error was harmless, the Court cannot do so because it cannot "confidently conclude that no reasonable ALJ, when fully crediting the [lay witness evidence], could have reached a different disability determination." Stout, 454 F.3d at 1055-56. If fully credited, the lay witness evidence substantially supports plaintiff's description of her impairments, symptoms and related limitations, and could have caused a reasonable ALJ to reach a different disability determination. Accordingly, this Court cannot deem the ALJ's failure to address the lay witness evidence.[2]

---

[2] Defendant suggests that the ALJ's failure to consider the two lay statements was harmless.

As to the statement of Kevin Hicks, defendant argues that it was unnecessary for the ALJ expressly to state his reasons for rejecting such statement because it was conclusory and contradicted by other evidence. (Defendant's Motion at 3-4). While the ALJ permissibly could have rejected Mr. Hicks' statement for the foregoing reasons, the record does not reflect that he did so, and the Court cannot so conclude on this record. This Court may not affirm the decision of an agency on a ground that the agency did not invoke in making its decision. Stout, 454 F.3d at 1054 ("[T]he ALJ, not the district court is required to provide [rationale] for rejecting lay testimony.") (citations omitted).

As to the statement of Brenda Hicks, defendant contends that it was not competent evidence because it was completed on February 19, 2005, over six months prior to the legal disability onset date of August 22, 2005 (when plaintiff first filed for benefits), and as such, could be rejected without explanation. (Defendant's Motion at 2-3). However, evidence predating August 22, 2005, to the extent it was in the record, had at least some probative value as

(continued...)

## V. CONCLUSION[3]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion and Order of Remand.[4]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: March 24, 2009

                                              /s/
                                      Honorable Jacqueline Chooljian
                                      UNITED STATES MAGISTRATE JUDGE

---

[2](...continued) to plaintiff's condition and limitations on August 22, 2005 and thereafter. Indeed, the medical expert referenced medical records that predated 2005, finding them probative, at least as corroborative evidence. (See AR 632-35). In any event, even if it was unnecessary for the ALJ to consider or address the statement of Brenda Hicks, a remand would still be appropriate based upon the ALJ's failure to address the statement of Kevin Hicks.

[3]The court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[4]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).